# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| EUGENE LUZZI | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 3:10cv481 (MRK) |
| | : | |
| KEITH HIRSCH, MICHAEL ROONEY, | : | |
| BRIAN BRIGGS, and JEFFREY | : | |
| STEMPIEN, | : | |
| | : | |
| Defendants. | : | |

## <u>MEMORANDUM OF DECISION</u>

Plaintiff Eugene Luzzi brings suit against Keith Hirsch, Michael Rooney, Brian Briggs, and Jeffrey Stempien—four Greenwich, CT police officers—in their individual capacities (collectively "Defendants"). Mr. Luzzi was arrested and charged with criminal trespass after he was found hunting on protected Greenwich Land Trust property. Mr. Luzzi alleges that, because he clearly did not know he was on public rather than private property, he was subjected to false and unreasonable arrest and malicious prosecution in violation of the Fourth Amendment of the U.S. Constitution and 42 U.S.C. §§ 1983, 1988.

Plaintiff's counsel is familiar with the standards for false arrest and malicious prosecution, which are well established. *See, e.g.*, *Simpson v. Denardo*, No. 3:02CV1471 (MRK), 2004 WL 1737444 (D. Conn. July 29, 2004); *Szekeres v. Schaeffer*, Nos. Civ. 301CV2099 (MRK), Civ. 301CV2108 (MRK), 2004 WL 722240 (D. Conn. Mar. 26 2004). Since those standards have not been met, Defendants' Motion for Summary Judgment [31] is GRANTED.

## I.

The facts set forth herein are culled from the parties' Local Rule 56(a) Statements [docs. # 31-3, 32-1], affidavits, and exhibits. Because this case is currently at the summary judgment stage, the Court presents the facts in the light most favorable to Mr. Luzzi, the nonmoving party. *See, e.g.*, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *DeFabio v. E. Hampton Union Free Sch. Dist.*, 623 F.3d 71, 74 (2d Cir. 2010) (per curiam). Unless otherwise indicated, all of the facts recited below are undisputed.

Prior to October 8, 2009, Mr. Luzzi obtained Anne Thomson's permission and a signed consent form to hunt on her property at 53 Peckland Road in Greenwich, CT. Mr. Luzzi bolted a tree stand into a tree that he mistakenly believed was on Ms. Thomson's property to use for hunting.

Mr. Luzzi, who has hunted since he was about 16 years old, knew that "it's your responsibility as a hunter to make sure" that one is not hunting on "private property or where you are not wanted," Mot. for Summ. J. [doc. # 31-4] Ex. 1 at 12:1, 30:5-8, 112:16-21 (Luzzi Deposition). However, Mr. Luzzi was not aware that Ms. Thomson's property abutted Greenwich Land Trust ("Trust") property or that his chosen tree was actually located on Trust property, where hunting was forbidden. The Trust is a private, non-profit conservation organization that actively seeks, protects, and cares for donated land. Land is donated to the Trust in order to preserve open space in perpetuity for the environmental health of the community and to promote clean air, clean water, and preservation of wildlife habitats, species, and natural beauty.

On October 8, 2009, Mr. Luzzi and his friend Ralph Stingone went to Ms. Thomson's property to hunt. At approximately 9:15 A.M., Officer Hirsch received a call from a source who had previously proved reliable and who wished to remain anonymous. The tipster reported

observing two subjects dressed in camouflage entering Trust property, most likely for the purpose of hunting on the property illegally. The property was described as being located along the northern curb line of the common driveway for several Pecksland Road residents. Officer Hirsch contacted Detective Stempien, whom Officer Hirsch knew to be in the area, and requested that he assist with the investigation.

Detective Stempien arrived at the scene at approximately 9:15 A.M.—at approximately the same time as the anonymous call. Detective Stempien located Mr. Stingone, in full camouflage and carrying a compound bow, tree stand, and arrows, sitting to the side of the road near the common access driveway. Mr. Stingone told Detective Stempien that his tree stand had broken and so he was waiting for his friend, who was hunting on the other side of the property, to pick him up. Mr. Stingone pointed out where Mr. Luzzi was hunting.

To confirm the general boundaries of the Trust's property, Detective Stempien contacted Daniel Barrett, a Director of the Greenwich Land Trust whom Detective Stempien knew to be familiar with the boundaries of the Trust property from previous hunting violation discussions. Detective Stempien described where he was located, and Mr. Barrett described the Trust property as extending from the area on the right-hand side of the common driveway to the ridge on the opposite side. Detective Stempien maintains that it was clear to him what Mr. Barrett meant by the ridge based on Mr. Barrett's description and given Detective Stempien's familiarity with the area. *See* Mot. for Summ. J. [doc. # 31-10] Ex. 7 ¶ 8 (Stempien Affidavit). Mr. Barrett also clarified that no one had permission to hunt on Trust property in that area.

When Officer Hirsch arrived, he saw Detective Stempien detaining Mr. Stingone in full camouflage and carrying a compound bow within the common driveway of Pecksland Road

north of Meadow Lane. Detective Stempien recounted his conversations with Mr. Stingone and Mr. Barrett to Officer Hirsch.

Officer Hirsch then attempted to locate Mr. Luzzi. He first found a black Ford Ranger pickup truck, parked and unoccupied, along the southern curb line of the private driveway of Ms. Thomson's property and determined that it was owned by Mr. Luzzi. Officer Hirsch saw black deer fencing, which he believed completely surrounded Ms. Thomson's property. *See* Mot. for Summ. J. [doc. # 31-9] Ex. 6 ¶ 9 (Hirsch Affidavit). After locating a heavily traveled deer trail approximately 20 yards west of where the deer fencing ended, Officer Hirsch followed the trail in a southerly direction towards the driveway where Detective Stempien was detaining Mr. Stingone. While in the woods, Officer Hirsch noted several markers, which he believed to be property markers, along the black plastic deer fencing. *See id.* ¶ 10. Mr. Luzzi acknowledges that there were markers, although he disputes whether they were property markers. *See* Mot. for Summ. J. [doc. # 31-3] ¶ 43 (Defs.' Local R. 56(a) Statement).

Officer Hirsch then found Mr. Luzzi standing on a tree stand dressed in full camouflage and holding a compound bow equipped with an arrow quiver and four arrows secured within it. Officer Hirsch identified himself as a police officer, he ordered Mr. Luzzi to lower his bow and climb down, and Mr. Luzzi complied.

When Lieutenant Briggs arrived on the scene, he met with Detective Stempien and Officer Hirsch, who were detaining Messrs. Luzzi and Stingone. Lieutenant Briggs witnessed Officer Hirsh's questioning of Mr. Luzzi, who explained that he had permission to hunt at 53 Pecksland Road. Mr. Luzzi produced the consent slip signed by Ms. Thomson and a valid Connecticut hunting license and stated that he believed his tree was on Ms. Thomson's property.

While everyone was still at the scene, Officer Rooney went to the Thomson house to question Ms. Thomson, but she did not answer the door at that time.[1] *See* Mot. for Summ. J. [doc. # 31-13] Ex. 10 at 6 (Rooney Responses to Interrogatories); Mot. for Summ. J. [doc. # 31-12] Ex. 9 ¶ 5 (Briggs Affidavit).

Because Mr. Luzzi disputed that he had been hunting on Trust property, Officer Hirsch and Lieutenant Briggs returned to the wooded area where Mr. Luzzi's tree stand was located so that Lieutenant Briggs could become familiar with the scene and take photographs and evidence. They located several additional markers. Based on their collective knowledge, Detective Stempien, Officer Hirsch, and Lieutenant Briggs agreed that Mr. Luzzi had been hunting on Trust property without permission. Defendants allege that this determination

> was based on the information from Stingone as to the second hunter's location, the information related from Barrett confirming the area of the Greenwich Land Trust property and that no one had permission to hunt there, the location of Luzzi and his tree stand, and the location of the property markers on Thomson's property.

Mot. for Summ. J. [doc. # 31-3] ¶ 56 (Defs.' Local R. 56(a) Statement).

Mr. Luzzi maintains that the Defendants "intentionally, irrationally and maliciously refused to credit the exculpatory information presented to them and accused the plaintiff without probable cause." Pl.'s Opp'n [doc. # 32-1] ¶ 56 (Pl.'s Local R. 56(a) Statement). Officer Hirsch placed Mr. Luzzi and Mr. Stingone under arrest for criminal trespass in the third degree pursuant to Connecticut General Statutes § 53a-109, which provides in relevant part: "A person is guilty of criminal trespass in the third degree when, knowing that such person is not licensed or

---

[1] Although Mr. Luzzi denies this claim on the basis that Ms. Thomson spoke with the Defendants, *see* Pl.'s Opp'n [doc. # 32-1] ¶ 51 (Pl.'s Local R. 56(a) Statement) (citing Pl.'s Opp'n [doc. # 32-2] (Property Owner's Letter)), nothing in the cited Letter describes the conversation between Ms. Thomson and a police officer as occurring on October 8, 2009 before Mr. Luzzi's arrest. Mr. Luzzi has therefore offered no proof to refute Officer Rooney's claim that he was not able to speak with Ms. Thomson prior to the arrest.

privileged to do so: . . . (2) such person enters or remains in any premises for the purpose of hunting, trapping or fishing . . . ." Conn. Gen. Stat. § 53a-109.

Mr. Luzzi and Mr. Stingone were taken to the Greenwich Police Headquarters and processed, then released after posting bond. According to Detective Stempien, while Mr. Luzzi and Mr. Stingone were being processed, he was contacted by Mr. Barrett, who indicated that he had visited the property and confirmed that the Trust owned all of the property west of the Thomson deer fencing. *See* Mot. for Summ. J. [doc. # 31-10] Ex. 7 ¶ 17 (Stempien Affidavit).

Officer Hirsch claims to have obtained a GIS map of the area later that day and returned to Ms. Thomson's residence, at which point Ms. Thomson confirmed that the area where Mr. Luzzi's tree stand was located was not her property. *See* Mot. for Summ. J. [doc. # 31-9] Ex. 6 ¶ 18 (Hirsch Affidavit). On October 28, 2009, Ms. Thomson sent the State's Attorney's Office a letter stating that her property ends at a stone wall (located well beyond the deer fencing and property markers) and that her acreage extends well beyond the deer fencing.

The criminal trespass charge against Mr. Luzzi was later nolled. He subsequently filed the Complaint [doc. # 1] that forms the basis for this action, which Defendants contest in their Motion for Summary Judgment [doc. # 31]. The motion has been fully briefed. *See* Pl.'s Opp'n [doc. # 32]; Defs.' Reply [doc. # 33].

## II.

This Court applies a familiar standard when resolving a motion for summary judgment. Summary judgment is appropriate only when the "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" submitted to the Court "show[ ] that there is no genuine dispute as to any material fact and that the movant is entitled to

6

judgment as a matter of law." Fed. R. Civ. P. 56(c)(1)(A); Fed. R. Civ. P. 56(a). A "material fact" is one whose resolution will affect the ultimate determination of the case. *See Anderson*, 477 U.S. at 248. A factual dispute is "genuine" when the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *See id.*; *see also Williams v. Utica Coll. of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006).

The moving party bears the burden of demonstrating that no genuine issue exists as to any material fact, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986), and the Court must resolve all ambiguities and draw all inferences in favor of the nonmoving party, *see Anderson*, 477 U.S. at 255; *DeFabio*, 623 F.3d at 74. However, the party against whom summary judgment is sought cannot prevail by "simply show[ing] that there is some metaphysical doubt as to the material facts," and instead it "must come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 & n. 11 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis in original). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

### III.

The Court first addresses Mr. Luzzi's claim of false and unreasonable arrest. As this Court noted in *Simpson v. Denardo*, 2004 WL 1737444, and *Szekeres v. Schaeffer*, 2004 WL 722240, to establish a claim for false arrest under 42 U.S.C. § 1983, a plaintiff is required to show that "'the defendant intentionally confined him without his consent and without justification.'" *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004) (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)). A determination that the Defendants had probable cause to arrest Mr. Luzzi establishes a complete defense to the false arrest claim. *See, e.g.*, *Kilburn v. Vill. of*

*Saranac Lake*, 413 Fed. App'x 362, 363 (2d Cir. 2011) (summary order) ("'The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest, whether that action is brought under state law or under § 1983.'" (quoting *Weyant*, 101 F.3d at 852) (citation and quotation marks omitted)).

As the Second Circuit recently clarified, in a case that shares many elements with this one, the probable cause inquiry

> is an objective one that focuses on the facts available to the arresting officer at the time of the arrest. Probable cause exists when, based on the totality of circumstances, the officer has knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested.

*Finigan v. Marshall*, 574 F.3d 57, 61-62 (2d Cir. 2009) (quotation marks and citations omitted); *see also Brinegar v. United States*, 338 U.S. 160, 175-76 (1949). "[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232 (1983). Because the Court finds that there are no genuine disputes of material facts,[2] the existence of probable cause is properly decided as a matter of law. *See Walczyk v. Rio*, 496 F.3d 139, 157 (2d Cir. 2007).

The Defendants had probable cause to arrest Mr. Luzzi. They had received a tip from a reliable source that two individuals were likely hunting on Trust property. Mr. Stingone indicated that Mr. Luzzi was hunting on what Detective Stempien believed to be Trust property;

---

[2] Based on the information gathered in discovery, no reasonable juror could conclude that Mr. Luzzi was not hunting on Greenwich Land Trust Property on October 8, 2009. At his deposition, Mr. Luzzi provided GPS coordinates of the location of his hunting tree stand. *See* Mot. for Summ. J. [doc. # 31-4] Ex. 1 at 67-72 (Luzzi Deposition). As described in the certified reports of two of Defendants' experts, these GPS coordinates were located within land owned by the Greenwich Land Trust. *See* Mot. for Summ. J. [docs. # 18, 19] Exs. 15, 16. Lastly, Mr. Luzzi's counsel conceded at oral argument that the tree was in fact on Trust property.

Detective Stempien's belief was strengthened by his conversation with Mr. Barrett, a Trust Director, who described the area where Mr. Luzzi was later located as Trust land where no one had permission to hunt. After passing deer fencing that he believed to enclose Ms. Thomson's property and what he believed to be property markers delineating the boundary between Thomson and Trust land, Officer Hirsch found Mr. Luzzi in his tree stand, apparently prepared for active hunting. When Mr. Luzzi maintained that he was on Ms. Thomson's, rather than Trust, property, Officer Rooney attempted to confirm his statement with Ms. Thomson, who did not answer the door and speak with any Defendant prior to Mr. Luzzi's arrest. Officer Hirsch then returned to the tree with Lieutenant Briggs to examine the evidence—namely, the location of the deer fencing and property markers that appeared to demarcate the boundary between Ms. Thomson's and Trust property. Based on this evidence, the Defendants reasonably concluded that Mr. Luzzi had been committing or was about to commit a crime. *See Finigan*, 574 F.3d at 61-62. Because they had probable cause to arrest Mr. Luzzi, the Defendants have established a complete defense to his false and unreasonable arrest claim.

At oral argument, Mr. Luzzi's counsel argued forcefully—but incorrectly—that because an essential element of the crime of criminal trespass in the third degree is knowing that one is trespassing, *see* Conn. Gen. Stat. § 53a-109, and because there was no evidence that Mr. Luzzi knew he was trespassing at the time of the arrest, the police officers had no probable cause to arrest him. Determining Mr. Luzzi's belief as to whose property he was on would be crucial in establishing a criminal trespass case, where *mens rea* is one of the required elements of the crime. It is irrelevant here.

As the Second Circuit recently noted, police officers need not conclude that an individual knowingly trespassed in order to have probable cause to charge that individual with criminal

trespass. *See Finigan*, 574 F.3d at 63; *see also Brinegar*, 338 U.S. at 175. Arguments to the contrary fail, because they

> incorrectly assume that an officer must have proof of each element of a crime and negate any defense before an arrest. However, even if the total sum of evidence here might not persuade a jury to convict for criminal trespass because of [the plaintiff's] belief in [his] right of entry, once officers possess facts sufficient to establish probable cause, they are neither required nor allowed to sit as prosecutor, judge or jury. Their function is to apprehend those suspected of wrongdoing, and not to finally determine guilt through a weighing of the evidence.

*Finigan*, 574 F.3d at 63 (quotation marks and alteration omitted). Mr. Luzzi's belief as to whether he was on Ms. Thomson's property is therefore immaterial.[3] As noted above, because the Defendants had ample reason to believe Mr. Luzzi was or was about to commit a crime of trespass, they had probable cause to arrest him.

Furthermore, even if the Court were in error in concluding that probable cause existed to arrest Mr. Luzzi for criminal trespass, the Defendants certainly had "arguable probable cause" to arrest Mr. Luzzi. Even if the "facts supporting probable cause to arrest are ultimately found not to have existed," an officer may still be entitled to qualified immunity on the basis of "'arguable probable cause,' which requires that he or she show that it was objectively reasonable to believe that probable cause existed or that officers of reasonable competence could disagree on whether the probable cause test was met." *Id.* at 61 (quotation marks and citation omitted). "[I]f police officers of reasonable competence could disagree as to whether there was probable cause, there is 'arguable' probable cause sufficient to warrant qualified immunity for the defendant officers." *Boyd v. City of New York*, 336 F.3d 72, 76 (2d Cir. 2003).

---

[3] Ms. Thomson may well have been confused as to the borders of her own property, *see* Mot. for Summ. J. [doc. # 31-4] Ex. 1 at 47:4-8 (Luzzi Deposition) (stating that Ms. Thomson thought that the relevant area had not yet been gifted to the Trust); Pl.'s Opp'n [doc. # 32-2] (Property Owner's Letter) (stating that the Thomson property extends to the stone wall), and misinformed Mr. Luzzi about the property lines, but such facts are equally immaterial.

For the reasons given above, a reasonable trier of fact would find that police officers of reasonable competence could disagree as to whether there was probable cause to arrest Mr. Luzzi. The Defendants are therefore entitled to qualified immunity from Mr. Luzzi's false arrest claim and the Court grants Defendants summary judgment on the claim for false and unreasonable arrest.

## IV.

Mr. Luzzi also asserts a claim for malicious prosecution. As this Court noted in *Simpson v. Denardo*, "'in order to prevail on a § 1983 claim against a state actor for malicious prosecution, a plaintiff must show a violation of his rights under the Fourth Amendment, and establish the elements of a malicious prosecution claim under state law.'" *Simpson,* 2004 WL 1737444, at *9 (quoting *Fulton v. Robinson*, 289 F.3d 188, 195 (2d Cir. 2002) (citations omitted)). While § 1983 affords a plaintiff a federal cause of action, courts generally "borrow the elements of the underlying malicious prosecution from state law." *Washington v. Cnty. of Rockland*, 373 F.3d 310, 315 (2d Cir. 2004). To sustain a malicious prosecution claim under Connecticut law, a plaintiff must prove the following:

> "(1) the defendants initiated or procured the institution of criminal proceedings against the plaintiff; (2) the criminal proceedings have terminated in favor of the plaintiff; (3) the defendant acted without probable cause; and (4) the defendant acted with malice, primarily for a purpose other than that of bringing an offender to justice."

*Simpson*, 2004 WL 1737444, at *9 (quoting *Lo Sacco v. Young*, 20 Conn. App. 6, 19-20 (1989), *cert. denied*, 213 Conn. 808 (1989)); *see also McHale v. W.B.S. Corp.*, 187 Conn. 444, 447 (1982). On the basis of the undisputed facts, a reasonable jury could not find that Mr. Luzzi can satisfy any of the required elements.

First, there is no evidence that the Defendants initiated or procured criminal proceedings against Mr. Luzzi. As this Court has had cause to observe before, "'[a]bsent a claim that [the officers] played more of an essential or influential role in seeking or procuring the . . . indictment, [plaintiffs'] bare-bones assertions against them are insufficient to state a claim for malicious prosecution." *Simpson*, 2004 WL 1737444, at *9 (quoting *Snodderly v. R.U.F.F. Drug Enforcement Task Force*, 239 F.3d 892, 901 (7th Cir. 2001)) (alterations in original). Here, there is no evidence that the Defendants "exerted pressure on the prosecutors, submitted knowing misstatements to them or concealed evidence from them." *Kennedy v. Chamberland*, No. 3:07-CV-214 (RNC), 2010 WL 1286789, at *6 (D. Conn. Mar. 30, 2010) (citing *Simpson*, 2004 WL 1737444, at *9). Given the absence of such evidence, a reasonable juror could not find that Mr. Luzzi satisfies the first element.

Second, Mr. Luzzi fails to demonstrate that a criminal proceeding terminated in his favor. It is undisputed that the charges against Mr. Luzzi were nolled. "Connecticut case law explicitly defines a *nolle* as 'a unilateral act by a prosecutor, which ends the pending proceedings without an acquittal and without placing the defendant in jeopardy,' in contrast to a dismissal, which 'is an act of court.'" *Walsh v. Sousa*, No. Civ. A. 3:01CV1872 (JCH), 2004 WL 717169, at *4 (D. Conn. Mar. 25, 2004) (quoting *Cislo v. City of Shelton*, 240 Conn. 590, 599 n.9 (1997) (quotation marks omitted)). "Moreover, a criminal defendant has the right to object to a nolle and to demand a trial or dismissal." *Simpson*, 2004 WL 1737444, at *10 (citing Conn. Gen. Stat. § 54-56b). At least with regard to malicious prosecution claims, "a person who thinks there is not even probable cause to believe he committed the crime with which he is charged must pursue the criminal case to an acquittal or an unqualified dismissal, or else waive his section 1983 claim." *Roesch v. Otarola*, 980 F.2d 850, 853 (2d Cir. 1992). Since "[a] *nolle prosequi* does not qualify

as a favorable termination for purposes of a malicious prosecution claim," *Simpson*, 2004 WL 1737444, at *10, a reasonable juror could not find that Mr. Luzzi established the second element.[4]

Third, as discussed above, probable cause existed at the time Defendants arrested Mr. Luzzi, defeating any claim for false arrest. "However, probable cause to arrest is distinct from probable cause to believe that, in this case [Mr. Luzzi] 'could be successfully prosecuted. Only the latter kind of probable cause is at issue with respect to the malicious prosecution claim.'" *Szekeres v. Schaeffer*, 2004 WL 722240, at *9 (quoting *Posr v. Court Officer Shield 207*, 180 F.3d 409, 417 (2d Cir. 1999)). Under Connecticut as well as New York law, "'the existence . . . of probable cause is measured as of the time the judicial proceeding is commenced [. . .], not the time of the preceding warrantless arrest.'" *Id.* (quoting *Meija v. City of New York*, 119 F. Supp. 2d 232, 254 (E.D.N.Y. 2000)).

In *Szekeres v. Schaeffer*, the plaintiff argued that additional, possibly exculpating material was gathered between the time of the arrest and the initiation of court proceedings, but that the defendant officers maliciously withheld this information to the plaintiff's detriment. *See id.* This Court nonetheless found that the additional information was not relevant to the charge, nor was there any evidence in the record to suggest that the defendant police officers either knowingly or unknowingly withheld information from the case report. *See id.* at *9-10.

Here, by contrast, the information gathered by police officers after the arrest and before the initiation of court proceedings *supported* their decision to arrest Mr. Luzzi. While Messrs. Luzzi and Stingone were being processed, Mr. Barrett confirmed that the Trust owned all of the property west of the Thomson deer fencing. *See* Mot. for Summ. J. [doc. # 31-10] Ex. 7 ¶ 17

---

[4] Even if a *nolle prosequi* was considered a favorable outcome, Mr. Luzzi still fails to establish any of the other required elements of a malicious prosecution claim.

Case 3:10-cv-00481-MRK   Document 37   Filed 10/19/11   Page 14 of 15

(Stempien Affidavit). Officer Hirsch claims to have later obtained a GIS map of the area and returned to Ms. Thomson's residence, at which point Ms. Thomson confirmed that the area where Mr. Luzzi's tree stand was located was not her property. *See* Mot. for Summ. J. [doc. # 31-9] Ex. 6 ¶ 18 (Hirsch Affidavit). Given this, a reasonable juror would find that there was probable cause to believe Mr. Luzzi could be successfully prosecuted and that Mr. Luzzi therefore fails to establish the third element.

Turning last to the fourth element, Mr. Luzzi has not presented any evidence that supports his claim that any Defendant acted with malice. The Second Circuit defines malice as a "wrong or improper motive, something other than a desire to see the ends of justice served." *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 573 (2d. Cir. 1996) (quotation marks and citation omitted). In his deposition, Mr. Luzzi claimed that Officer Hirsch was "very aggressive" because he approached Mr. Luzzi's tree stand "like he was mad at me for something." Mot. for Summ. J. [doc. # 31-4] Ex. 1 at 125 (Luzzi Deposition). However, Mr. Luzzi did not identify anything other than Officer Hirsch's tone and volume during that exchange as reason for finding him "very aggressive." *See id.*

When Mr. Luzzi was released after posting bond and asked about his truck, Detective Stempien joked that it had been towed. *See id.* at 125-127. This joke at Mr. Luzzi's expense— who was understandably quite shaken by the events of the morning—was clearly inappropriate and resulted in Mr. Luzzi suffering unnecessary additional stress. However, Detective Stempien swiftly clarified, and Mr. Luzzi quickly understood, that it had been just a joke. *See id.* The Court agrees with Mr. Luzzi that the police have a duty to enforce the law with respect to hunting, but that "they could have [gone] about it a little differently." *Id.* at 134:9-10. The Defendants' actions

14

were not so heinous or unfounded, however, that a reasonable juror could find that they acted with the requisite intent to subvert the law.

Mr. Luzzi is not able to establish any of the four required elements for a malicious prosecution claim. As the lack of any individual element would have been fatal, the Court grants Defendants summary judgment on the claim for malicious prosecution.

## V.

Because Mr. Luzzi cannot support either his false and unreasonable arrest or his malicious prosecution claims, Defendants' Motion for Summary Judgment [31] is GRANTED. **The Clerk of Court shall enter judgment in accordance with this Order and close the file.**

**IT IS SO ORDERED.**

/s/     Mark R. Kravitz
United States District Judge

Dated at New Haven, Connecticut: **October 19, 2011.**